Angelica K. Weber (SBN 291811)
aw@weber4law.com
Christopher Carney (SBN 328367)
cc@weber4law.com
**LAW OFFICES OF WEBER & WEBER**
221 E. Glenoaks Boulevard, Suite 107
Glendale, California 91207, United States
Telephone (818) 502-9200 ♦ Fax (818) 502-9265

Attorneys for Plaintiff IAN ROBINSON

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| IAN ROBINSON,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>AMERICAN INTERNATIONAL GROUP, INC.; AIG CLAIMS, INC.; and, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; and DOES 1 through 50, inclusive,<br><br>　　　　　Defendants. | Case No.: 2:21-cv-00749-ODW-MRW<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT TO RECOVER BENEFITS, ATTORNEYS' FEES, AND PRE-JUDGMENT AND POST-JUDGMENT INTEREST UNDER ERISA PLAN – 29 U.S.C. SECTIONS 1132(a)(1)(B), (g)(1)** |

　　　Plaintiff IAN ROBINSON hereby asserts the following claims for relief against Defendants AMERICAN INTERNATIONAL GROUP, INC.; AIG CLAIMS, INC.; and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 50, inclusive ("Defendants"):

//

## JURISDICTION AND VENUE

1. Pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. section 1132(a)(1)(B), Plaintiff brings this action to recover benefits, to enforce his rights, and to clarify his rights under the terms of his plan.

2. This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA section 502(e) and (f), 29 U.S.C. section 1132(e) and (f), and 28 U.S.C. section 1331.

3. Venue lies in the Central District of California pursuant to ERISA section 502(e)(2), 29 U.S.C. section 1132(e)(2), because Plaintiff resides in this District, some of the breaches alleged occurred in this District and the ERISA-governed plan at issue was administered in part in this District.

## THE PARTIES

4. Plaintiff Ian Robinson was, at all times relevant to this action, a resident of Los Angeles County, California. Further, Plaintiff was, at all times relevant to this action, a participant, as defined by ERISA section 3(7), 29 U.S.C. section 1002(7), in the employee welfare benefit plan (the "Plan") established by his employer Raytheon Company, which is at issue in this action.

5. Defendant American International Group, Inc. ("AIG, Inc."), at all times relevant to this action, administered accidental death and dismemberment benefits provided to Plan participants, including Plaintiff. AIG, Inc. administered group policy number PAI 9053931A to Raytheon Company as the authorized claims administrator on behalf of Defendant NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. That policy and the Plan promised to pay accidental death and dismemberment benefits to Plaintiff should he or any eligible persons under the plan die or become dismembered.

6. Defendant AIG CLAIMS, INC., (hereinafter referred together with AIG, Inc. as "AIG") at all times relevant to this action, and in conjunction with or at the

direction of Defendant AIG, Inc., administered accidental death and dismemberment benefits provided to Plan participants, including Plaintiff. AIG administered group policy number PAI 9053931A to Raytheon Company as the authorized claims administrator on behalf of Defendant NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. That policy and the Plan promised to pay accidental death and dismemberment benefits to Plaintiff should he or any eligible persons under the plan die or become dismembered.

7. AIG, at all times relevant to this action, has acted as a claims administrator and as an ERISA claims fiduciary of the Plan. A "fiduciary" is under a duty of loyalty and care to the beneficiaries of the Plan. See 29 U.S.C. § 1104(a)(1). Under ERISA, a fiduciary must (1) discharge its duties solely in the interest of plan participants and beneficiaries and for the exclusive purpose of providing plan benefits to them; (2) act with care, skill, prudence and diligence; and (3) may not act in any capacity involving the Plan, on behalf of a party whose interests are adverse to the interests of the Plan, its participants, or its beneficiaries. 29 U.S.C. § 1104(a)(1)(A)-(B).

8. Defendant NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., at all times relevant to this action, provided group policy number PAI 9053931A to Raytheon Company, which was administered by its authorized claims administrator AIG on its behalf. That policy and the Plan promised to pay accidental death and dismemberment benefits to Plaintiff should he or any eligible persons under the plan die or become dismembered.

9. The true names and capacities, whether individual, corporate, associate or otherwise of the defendants named herein as DOES 1 through 50, inclusive, are unknown to Plaintiff at this time, who therefore sues DOES 1 through 50 by fictitious names and will ask leave of the Court to amend this Complaint to show the true names and capacities of DOES 1 through 50 when the same are ascertained; DOES 1 through 50 are sued as principals and/or agents, servants, attorneys, and employees of said principals, and all the acts performed by them were within the course and scope of their

authority and employment. Plaintiff is informed and believes and thereupon alleges that each of DOES 1 through 50 is legally responsible in some manner for the events and happenings referred to herein, and directly and proximately caused the damages and injuries to Plaintiff as hereinafter alleged.

## FACTUAL BACKGROUND

10. Plaintiff began working for Raytheon Company on or about February 2, 2004 as an Engineering Fellow. His current title is Senior Engineering Fellow and his job duties include analysis, design, oversight, and overall system engineering of space and airborne sensors and systems.

11. Pursuant to the terms and conditions of the Plan, Plaintiff is entitled to accidental death and dismemberment ("AD&D") benefits for the death of his minor stepson, Vincent Barbee, who, at all times relevant to this action, was Plaintiff's eligible dependent child under the Plan. A true and correct copy of the Plan documents is attached hereto as **Exhibit "1."**

12. On March 5, 2018, Plaintiff's minor stepson Vincent fell from the third-story balcony of Plaintiff's residence in Redondo Beach, California at approximately 6:35pm. Paramedics and police responded and Vincent was rushed to the Emergency Room at a local hospital where shortly thereafter he was pronounced dead at 7:18pm from "multiple blunt injuries."

13. An autopsy report from the Department of Medical Examiner-Coroner for the County of Los Angeles concluded: "WITNESSES: None. OPINION: The demise of this 15 year old male adolescent is the result of multiple blunt injury marks on the head, after he came down from a 3rd story balcony at his residence. The circumstances where this happened are not well understood, and there is not enough evidence to adjudicate this case. For this reason the manner of death could not be determined." A true and correct copy of the Autopsy Report is attached hereto as **Exhibit "2."**

14. The official California Death Certificate lists the cause of death as "multiple blunt injuries" and the manner of death as "could not be determined." A true and correct copy of the Death Certificate is attached hereto as **Exhibit "3."**

15. The Redondo Beach Police Department ("RBPD") responded to Plaintiff's residence on the night of the fall and investigated. The RBPD "Death Report" states "PROBABLE TYPE (TRAFFIC, NATURAL, SUICIDE): Undetermined." The narrative recounts that the officer authoring the report "believed Vincent jumped/fell off the third story balcony." A true and correct copy of the RBPD "Death Report" is attached hereto as **Exhibit "4."**

16. An RBPD detective also investigated. He visited the local hospital on the night of Vincent's fall. He conducted subsequent interviews and investigations with Vincent's family, friends, and school officials. He also investigated tangible items of Vincent's like a laptop computer. In the detective's report, he writes: "By the families account, Vincent Barbee was a well-adjusted 15 year old who showed no signs of wanting to commit suicide. Barbee was in contact with friends prior to his death and showed no signs of depression. Vincent had made long-term plans with friends and family and the death is a complete surprise to them. The family believes that Vincent had no reason to commit suicide and believe his death to be accidental." A true and correct copy of the RBPD Detective's Report is attached hereto as **Exhibit "5."**

17. Further, the RBPD detective's report states: "Possible reasons for Vincent to be on the roof balcony would be to remove Christmas lights. Five clips, used to secure the Christmas lights to the balcony, were removed and placed on a table. The family believes that Vincent may have been removing the Christmas lights when he fell off the balcony." **(See Exhibit "5".)**

18. Further, the RBPD detective's report states: "Note: *It had rained the previous day and the balcony was wet."* (emphasis in the original). **(See Exhibit "5".)**

19. No suicide note was found. Nor was there any indication to Vincent's family members, particularly his mother, Martha Barbee, that Vincent had suicidal ideations or

depression of any kind in the weeks, months, and years prior to his death. A true and correct copy of the declaration of Vincent's mother, Martha Barbee, that was included with the administrative appeal is attached hereto as **Exhibit "6."**

20. On June 23, 2019, Plaintiff submitted a claim to AIG to recover accidental death benefits, the amount of which was determined under the Plan to be $236,000.

21. On January 10, 2020, AIG denied the claim. AIG's denial letter states: "[W]e must decline payment of this claim as evidence exists that Vincent's death was not due to a bodily injury caused by an accident but rather his death was ruled to be due to suicide or self-inflicted injury, which is specifically excluded under the policy." A true and correct copy of the AIG denial letter is attached hereto as **Exhibit "7."**

22. AIG's denial letter does not specify who "ruled" Vincent's death a suicide. Nor does it provide reasoning for how conflicting evidence is reconciled. (See **Exhibit "7".**)

23. AIG's denial letter relies on an exclusion under the terms and the conditions of the Plan that prohibits recoveries for losses resulting from "suicide or any attempt at suicide or intentionally self-inflicted injury or any attempt at intentionally self-inflicted injury." (See **Exhibit "7".**)

24. On August 10, 2020, Plaintiff, with the assistance of counsel, submitted a 22-page administrative appeal. A true and correct copy of the Appeal is attached hereto as **Exhibit "8."**

25. On October 26, 2020, AIG denied Plaintiff's appeal. AIG's denial of the appeal blatantly ignores many of the issues raised in Plaintiff's appeal. Further, it draws incorrect conclusions of fact and law. A true and correct copy of the Appeal Denial Letter is attached hereto as **Exhibit "9."**

26. In the appeal denial letter, AIG asserts a different justification for the denial than what AIG had originally asserted in its denial of the claim: "We do not disagree that we have the burden to support any exclusion. However, this is moot since the credible evidence in the administrative record does not support Injury by accident

resulted in death. Based on the credible evidence in the administrative records, the [ERISA Appeal Committee] concluded that there was insufficient evidence to support Injury by an unintended, unanticipated accident resulted in the death of Vincent Barbee. For these reasons, the [ERISA Appeal Committee] denies the appeal." (See **Exhibit "9"**.)

27. The Plan defines "Injury" as the following: "bodily injury: (1) which is sustained as a direct result of an unintended, unanticipated accident that occurs while the injured person's coverage under this Policy is in force, and (2) which directly (independent of sickness, disease, mental incapacity, bodily infirmity or any other cause) causes a covered loss." (See **Exhibit "1"**.)

**FIRST CLAIM FOR RELIEF - To Recover Benefits, Attorneys' Fees, and Pre-Judgment and Post-Judgment Interest under ERISA Plan - 29 U.S.C. Sections 1132(a)(1)(B), (g)(1) (Plaintiff against AIG and Does 1 through 50)**

28. Plaintiff incorporates Paragraphs 1 through 25 as though fully set forth herein.

29. Pursuant to ERISA section 502(a)(1)(B), 29 U.S.C. section 1132(a)(1)(B), Plaintiff brings this civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

30. At all relevant times, Plaintiff has been entitled to accidental death benefits under the Plan in the amount of $236,000 for the death of his eligible dependent child. By denying Plaintiff's claim for accidental death benefits under the Plan, and by related acts and omissions, AIG has violated, and continues to violate, the terms of the Plan and Plaintiff's rights thereunder.

31. AIG has failed to follow the rudimentary claims processing requirements of ERISA and Federal Regulations by failing to conduct a "full and fair review" of the claim denial, as required by 29 U.S.C. Section 1133(2).

32. A death or injury may be "deemed 'accidental' under a group accidental insurance policy established under ERISA if the death [or injury] was unexpected or unintentional." Padfield v. AIG Life Ins. Co., 290 F.3d 1121, 1126 (9th Cir. 2002).

33. In determining when a death is unexpected or unintentional, courts use an overlapping subjective and objective inquiry that first asks whether the insured subjectively lacked an expectation of death or injury; and, secondly, whether that expectation was reasonable. Id. See also Todd v. AIG Life Ins. Co., 47 F.3d 1448, 1456 (5th Cir. 1995); Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1088 (1st Cir.1990).

34. There is no evidence that Vincent Barbee subjectively expected, intended, or anticipated on the night of his death not to survive. No suicide note was found. No witnesses observed Vincent jump from the balcony. No witnesses observed Vincent intentionally and/or anticipatorily climb onto the outside of the guardrail. The fact that there is a handprint smudge on the glass of the balcony is not dispositive because it could have been made while Vincent was taking down Christmas lights, as other evidence corroborates. In fact, it is not even clear that the handprint is Vincent's.

35. Moreover, not once did Vincent say he was going to commit suicide on that night or at any time before that night; nor did he exhibit any suicidal or depressive behaviors that day or at any time before that day. Any conclusion to the contrary is speculative and self-serving. He had made long-term plans and his death that night came as a complete "surprise" to his family.

36. AIG has failed to apply relevant federal common law and complementary state law that holds there is a presumption against suicide and in favor of accidental death when evidence is inconclusive. Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir.1998) (specifically holding that the federal common law presumption against suicide and in favor of accidental death applied to ERISA benefit claims).

37. Federal common law is applicable to govern issues in ERISA actions not covered by the act itself. Schikore v. BankAmerica Supplemental Ret. Plan, 269 F.3d 956, 961 (9th Cir. 2001).

38. "Congress intended for the courts, borrowing from state law where appropriate, and guided by the policies expressed in ERISA and other federal labor laws, to fashion a body of federal common law to govern ERISA suits." Scott v. Gulf Oil Corp., 754 F.2d 1499, 1502 (9th Cir. 1985).

39. If ERISA does not include specific provisions, federal courts have "the authority, indeed the obligation, to adopt a federal rule—that is, a rule that best comports with the interests served by ERISA's regulatory scheme." PM Group Life Ins. Co. v. Western Growers Assurance Trust, 953 F.2d 543, 546 (9th Cir.1992). See also Menhorn v. Firestone Tire & Rubber Co., 738 F.2d 1496, 1499 (9th Cir.1984) (legislative record evinces congressional intent for federal substantive law to be developed by the courts); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56, 107 S. Ct. 1549, 1557 (1987) (courts are to develop "federal common law of rights and obligations under ERISA-regulated plans").

40. Common law has existed in the United States and England for hundreds of years, and part of that law is that suicide will not be presumed. See 31A C.J.S. Evidence § 183, at 362–65; Couch on Insurance, § 138:66.

41. A great majority of states recognize the presumption against suicide; additionally, many courts recognize a corresponding presumption in favor of accidental death, but treat these presumptions as rebuttable. See Couch on Insurance, § 138:66 (3d ed.1997); Horton, 141 F.3d at 1041 (citing Couch and recognizing double presumption).

42. In Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir.1998), the court held that applying federal common law presumptions against suicide and in favor of accidental death applied to ERISA benefit claims and was consistent with the central purpose of ERISA which is to "protect the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. Section 1001

(b) (congressional findings and declaration of policy). See also Shaw v. Delta Air Line, Inc. 463 U.S. 85, 90, 103 S. Ct. 2890, (1983); Nichols v. Unicare Life & Health Ins. Co., 739 F.3d 1176, 1184, fn 4, (8th Cir. 2014) (dicta countenancing presumption against suicide and in favor of accident).

43. Generally, the Plan does not vest sole discretion in AIG to make benefit determinations because no clear language in the Plan expressly or implicitly reserves sole discretion to make plan determinations. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57, (1989); Winters v. Costco Wholesale Corp., 49 F.3d 550, 552 (9th Cir. 1995).

44. Even so, an ERISA administrator acts arbitrarily and capriciously in determining that an insured has committed suicide, when the administrator exercises selective review of available evidence, limiting its record to evidence supporting inference that victim had committed suicide, and ignoring, inter alia, evidence like an amended death certificate, which had changed stated cause of death from "suicide" to "indeterminate as to intent." Brown v. Hartford Life Companies, 593 So. 2d 1376 (La. Ct. App. 5th Cir. 1992); See also, e.g., Acree v. Hartford Life and Acc. Ins. Co., 917 F. Supp. 2d 1296, 56 Employee Benefits Cas. (BNA) 1099 (M.D. Ga. 2013) (de novo review after denial determined arbitrary and capricious when conflicting evidence was selectively reviewed by administrator).

45. Even if the Plan vests sole discretion in AIG to make benefit determinations, no deference is warranted to AIG because their failure to apply relevant federal common law is arbitrary and capricious. Schikore, 269 F.3d at 961 citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447 (1990) (erroneous views of the law are necessarily an abuse of discretion); Levi Strauss & Co. v. Shilon, 121 F.3d 1309, 1313 (9th Cir. 1997).

46. Lastly, AIG has not complied with ERISA and federal regulations, requiring specificity and a "full and fair review" of the claim denial, because AIG has shifted its position from first relying on an exclusion to deny coverage, to now contending that the

exclusion is "moot" and that Plaintiff has not met his burden in providing proof that an "Injury" occurred as defined by the Plan. AIG has not identified under the Plan or subsequently what evidence would suffice. Booton v. Lockheed Medical Benefit Plan, 110 F.3d 1461, 1465 (9th Cir., 1997); see also Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 538 (9th Cir. 1990) (burden is on the plan to obtain adequate information to make decision).

47. AIG has ignored obvious evidence and justifications for Vincent's death being an accidental one and has chosen instead to credit selective and conclusory evidence. Its shift from relying on an exclusion to deny coverage to now claiming Plaintiff has not met his burden is arbitrary, capricious, wrong, self-serving, contrary to the evidence, contrary to the terms of the Plan and contrary to law.

48. Plaintiff has met his burden in presenting a claim under the Plan because there is substantial evidence to conclude Vincent Barbee's death was accidental. No suicide note was found. No witnesses observed the accident. Vincent did not display any suicidal or depressive behavior and made no verbal or non-verbal assertions of his intent or motive to commit suicide. No physical evidence like his laptop computer evince an intention or motive to commit suicide. Moreover, physical evidence from the balcony on the night of the Vincent's death like the fact that it was wet is consistent with and corroborates an accidental death.

49. Alternatively, if the evidence is inconclusive, the presumption against suicide and in favor of an accidental death should apply. Horton, 141 F.3d at 1042.

50. If there is an ambiguity in the Plan as to what an "unintended" or "unanticipated" injury or death is, then that ambiguity shall be resolved against the drafter. Kunin, 910 F.2d at 539.

51. AIG has abused its discretion in denying this claim. Its actions are arbitrary, capricious, wrong, unreasonable, self-serving, irrational, contrary to the evidence, contrary to the terms of the Plan, and contrary to law.

52. Furthermore, AIG shifting its justification for the denial heighten the level of skepticism with which a court must view a conflicted administrator's decision. <u>Abatie v. Alta Health & Life Insurance Co.</u>, 458 F.3d 955 (9th Cir. 2006); <u>Metropolitan Life Insurance Co. v. Glenn</u>, 544 U.S. 105 (2008).

53. AIG has flouted the central purpose of ERISA, which is to "protect the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. Section 1001 (b) (congressional findings and declaration of ERISA policy)

54. "We are not persuaded that Congress, by enacting ERISA, meant to change the established, basic presumptions on the subject of accidental death. It still makes sense not to deprive innocent heirs […] without sufficient evidence of suicide." <u>Horton</u>, 141 F.3d at 1042.

55. As a direct and proximate result of AIG's denial of accidental death benefits, Plaintiff has been deprived of benefits.

56. As a direct and proximate result of AIG's denial of accidental death benefits, Plaintiff has been required to incur attorneys' fees to pursue this action, and is entitled to reimbursement of these fees pursuant to 29 U.S.C. section 1132(g)(1).

57. A controversy now exists between the parties as to whether Plaintiff is entitled to benefits, as defined in the Plan. Plaintiff seeks the declaration of this Court that he is entitled to benefits under the Plan. In the alternative, Plaintiff seeks a remand to the claims administrator for a determination of Plaintiff's claim consistent with the terms of the Plan.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant the following relief against all defendants:

1. For all Plan benefits due and owing Plaintiff;

2. For costs and reasonable attorneys' fees pursuant to 29 U.S.C. Section 1132(g);

3. For pre-judgment and post-judgment interest on the principal sum, accruing from the date the obligations were incurred. See Blankenship v. Liberty Life Assurance Co. of Boston, 486 F.3d 620, 627 (9th Cir. 2007) ("A district court may award prejudgment interest on an award of ERISA benefits at its discretion."); Drennan v. General Motors Corp., 977 F.2d 246, 253 (6th Cir. 1992). Specifically, Plaintiff seeks interest at the rate of 10% per annum, pursuant to California Insurance Code section 10111.2.

4. For such other and further relief as this Court deems just and proper.

Dated: March 2, 2021              Respectfully submitted,
                                  **LAW OFFICES OF WEBER & WEBER**


                                  By: /s/ Christopher P. Carney
                                  CHRISTOPHER P. CARNEY
                                  ANGELICA K. WEBER
                                  Attorneys for Plaintiff